The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, United States Court of Appeals for the 4th Circuit are admonished to draw a 9 and give their attention for the Court is now sitting. God save the United States and this Honorable Court. David Betts I'm pleased to be appointed counsel in this appeal for Mr. Pratt. I'm sorry. While I'm appointed owner, I'm very pleased to be here representing him to make clear it's not my purpose today to try to put lipstick on a pig. This is clearly a disgraceful kind of case. It's disturbing. The facts are very disturbing. But other facts disturbing also are the fact that Mr. Pratt's 4th and 6th Amendment rights have been violated and as a result of that, he's facing life in prison. So we can appreciate the importance and the seriousness of the situation that we raise in these two issues that we brought to the Court. Mr. Pratt has a failure to suppress evidence that was obtained from his cell phone. Cell phone is a background for it. Of course, there had been a sting operation because of a minor supposedly being prostituted. At the motel, Mr. Well, you're not challenging the initial seizure. You're not challenging the initial seizure. Not at all, Your Honor. Your challenge goes to the 30-day seizure and search. That's correct, Your Honor. I think counsel below had made his suppression motions and maybe argued some other things regarding circumstances and so forth. Those were all there. I'm not challenging that seizure at all. What we are saying is that because of the delay, there's a warrantless seizure, such as we have here. You must still obtain a search warrant by using due diligence. What is that? It's on a case-by-case basis. We've got to look at it. Can I ask you, Mr. Betz, the government alleges that, in fact, most of its argument hinges on the standard of review. They say that this issue wasn't properly preserved in the District Court. Do you review this at all? It should be for plain error. I would invite the Court to please look at page 113 of the Joint Appendix, in which case it was clear it wasn't well done, I'll acknowledge, as far as the initial motion to suppress. It wasn't contained in the appendix. It wasn't. It was not in it. You're correct. But on page 113 of the Joint Appendix, we see that it was finally, Tri-Council finally said, look, I'm here arguing about the time limit. You can't wait 31 days. This was wrong. No due diligence was followed by the police officers in doing that. And then the Court went on. The Court acknowledged that Council below made that argument. The Court ruled on it. The Court did rule on it. So I think you did take it up. In fact, the Court cited many of the cases that are applicable today that we'll be talking about, the Mitchell case out of the 11th Circuit. They addressed those. The District Court even mentioned Valamore, I think. Why, I'm not sure, because, frankly, that case was an unpublished opinion in the 11th Circuit. So, Mr. Lovetz, how long do you think is too long? Obviously, you think this is too long, but where do we draw the line? I think the question really becomes, any delay is looked at, to begin with, as unreasonable. What the 11th Circuit guidance gave us in the last decision... Let me follow Judge Diaz's question. I mean, are you arguing that 30 days is too long regardless of the circumstances or is it a circumstantial test? It's a circumstantial event, and some guidance was given to us. First of all, in Mitchell, they said, you had the agents come in and said, well, I just didn't think it was urgent. And the 11th Circuit said, that isn't a good enough excuse for a 21-day delay. You've got to tell us some other reason. They followed up, the 11th Circuit followed up with the Leitz case, Leitz, L-A-I-S-T. I didn't actually cite it, but the government did. The government has cited it, and it was considered by the district court. That court gave us many examples. It says the government acted diligently in trying to obtain the warrant. They had some problems. The attorney had to do some edits. In other words, there were excuses. There was a whole long paragraph in that case. They had to prepare the affidavit. It contained substantial information regarding background that the agent didn't have immediately available to him. So they listed a series of circumstances. In this case, when the district court was ruling from the bench to say that the search of the phone was not on a reasonable delay, it started by saying, in light of the record in this case, and I'm going to ask you the same thing I'm going to ask counsel for the government. So in the government's brief, it recites that the government had to determine the best jurisdiction to apply for a search warrant. The reference is to page 477 of the appendix, where the dialogue is, did it take some time to get a search warrant? It did. And did that weigh the determination of where to bring the charges? Yes, because the pending case in the state court was actually an arrest in Columbia, South Carolina. So I'm assuming that that is the government's reason for the 30-day delay. Is that what you understand them to argue? I suppose that was an argument or could have been one. I'm not sure it was clearly made and the court didn't rule on it. The district court never made a finding that said, I find that for these reasons, it was reasonable. Here was the excuse. They had a magic number. Can we look at the evidence that came in the trial to support the ruling on suppression? I don't believe you can, Your Honor. Really? I think what you have to look at is the evidence. And I don't know specifically the evidence you're looking at. I'm looking at what Judge Agee just read you, this business about they didn't know whether it was going to be in North Carolina or South Carolina. They didn't know whether the crime was going to be charged in North Carolina or South Carolina. I just have weak ears, apparently. I'm sorry. Even considering that, you know, it's a comment. And it's maybe one factor. Maybe it's one factor. If you do consider it. I believe... Well, if you think the case is justifying these delays, that sounds like enough of a reason. It's not a very stringent standard. They did get the warrant before they looked at the evidence, right? They finally did get the warrant after 31 days. I think we've got to consider, though, what would have happened had it just... Here we've got a 31-day period that the purpose of all of this, of having to go get a warrant, is if there was no incriminating evidence, he needed to get his phone back. He was entitled under the Fourth Amendment not to have that possessory interest lost. Well, maybe this is a question better directed at the government, but how long does it take to get on the phone with another agency and decide we're going to do this in North Carolina or South Carolina? It doesn't take 31 days, does it? I agree, Your Honor, and that may be one factor to consider, but we're looking at a serious violation under the Fourth Amendment. As I understand it, you didn't handle this case below, correct? That's correct. But you've read the record. Pardon? You've read the record. Oh, yes, Your Honor, I have read it. You say they didn't handle the case below so they don't know what the record is. To be very... I had studied the record before. I don't profess to have it on top of my head, I remember. But what I'm now asking you is, did the gentleman, your predecessor, did he make that argument? This isn't a good reason. Was there any comeback to... I think he just said there had been no due diligence. I don't think there was a comeback that I recall that he actually made. Your Honor, I hate to move forward and I don't want to waive my other issue, which was the... Well, you're not waiving it. It's in the brief, but I want to... Okay, I want to make sure. I want to pay a little bit more attention to this because... Thank you. Even if we agree with you, it doesn't appear that we agree with you, but perhaps we do. Why isn't this harmless error, given the other evidence in the record, the admission by your client that he had nude photos of the minor victim on his phone and the minor victim's statement to the police that, in fact, she had transmitted nude photos to the defendant in this case? Your Honor, it was so incriminating. The facts, the pictures, what was seized out of the phone, which we're told you needed a warrant to get that. You weren't entitled to get it without a warrant. Those were so incriminating, so prejudicial, that regardless of other information that might have come in, I believe there's a reasonable belief, possible, that a jury would not have found, by reasonable doubt, guilt based upon the other evidence. That's why harmless error, I think, would be an improper standard. As a worst-case scenario, I think we should be looking at a reversal here. If the government wants to come back and try the case again, so be it, with admissible evidence. But I believe harmless error would be a terrible way from this. This man's going to die in jail based upon this violation. Let's talk about that resolution. If you went back, clearly this would come in, right? Because now there's a warrant for it. So I'm just not sure what that gains you. Yeah. And I guess I didn't think that through too well myself. I was thinking it would still be excluded because you had this 31-day delay and you shouldn't have got it. I don't think you should be allowed now to let it back in. I think the delay was done. But this is a, if I can crystallize what I comprehend your argument to be, this is not a case where you are arguing that the government gave no reason for waiting 30 days. I take it that your argument is the reason that they gave, which was some confusion over jurisdiction. We'll get into that with the Governance Council. But that reason was insufficient.  That would be correct, Your Honor. I certainly didn't. I didn't even cite it as being a possibility. I don't see that as a valid. That doesn't seem to me to be the standard that the 11th Circuit at least was using. They had a whole list of considerations. I mean, it could be a lot of things. Agent could be sick. Badgers could not be evaded. All kind of possibilities. But I think you've got to have a series of explanations. This isn't a case where the government just put the application in somebody's desk drawer and didn't look at it for 30 days. They gave a reason for the delay. The reason may be insufficient, but they gave a reason. Do you agree with that? Based on what had been brought to my attention, yes, Your Honor, I would agree that they did mention this jurisdictional question. It could have been resolved so quickly, and certainly not justifying the length of the delay that was involved. Well, once the government gave a read well, I assume your argument would be that the burden is on the government to show the reasonableness of the delay. The burden is on you to show unreasonableness. But once the government does provide a reason, what burden is then up to the defendant once the government has placed a reason for the delay on the record? Do you have a burden to go forward with some challenge? Your Honor, I think in the arguments that were made, it was simply that 31 days was not available. And the answer should be that that one explanation, that one item was not enough, and the burden had not been met by the government to explain. I always thought that this was the tail wagging the dog as far as the decision. Just this Court saying, I have not been shown reason that it's unreasonable. I think the burden was always on the government, and part of its list, he said, jurisdiction was just one item. I'm saying that isn't enough. My time is almost up. If there are any questions, my alarm. Talk about your second argument. Of course, there are three items. I would call the Court's attention primarily. The Court made it easy for us. It said on page 434 that it was considering three specific exhibits. These were phone conversations with the minor, actually through the mother. They last a total of six pages. They are found in the sealed joint appendix, first six pages of it. Those are the three conversations. I invite you to please read those. Frankly, they're somewhat incoherent, the conversation supposedly between Mr. Pratt and this minor. The gist of it, I don't deny, is I don't want you to testify. I hope you don't. In fact, in one of the lifelines, it says, I hope you're not cooperating. What I'm suggesting to you, looking at all the cases, and I've cited many that talk about murder, intimidation, and so forth, I won't repeat them. They're right there in my brief. Doesn't context matter here? I mean, in the abstract, you're right that that conversation is often horrible, sometimes unintelligible, and perhaps innocuous. But you have to look at the context of the relationship between this defendant and this victim, who the record suggests was the victim of horrific sexual and emotional and physical abuse. And it's in that context, I think, that the district court considered the nature of this conversation in deciding whether or not there was, in fact, forfeiture by wrongdoing. So why isn't that at least a reasonable interpretation of what happened here? I don't think it is because the question is whether that conversation caused this person not to be there. She thought she was his girlfriend, right or wrong. Like I said, this is some ugly facts. But the truth of the matter is this young lady was not scared of this man, didn't feel threatened, and he couldn't carry out anything anyway from jail. He'd never threatened her. I'd say a perfect example I gave, I represented someone once before, I said, are you under subpoena? This was a CDV case, husband and wife, wife punched the guy in the eye. He shows up for trial. We, of course, hoped he wasn't going to come in at the Madison's hearing. We wouldn't have to demand a jury trial. He asked me, do I have to be here? I said, well, we don't really want you here, but are you under subpoena? He said, no. I said, it's up to you. The judge asked me a simple question, Mr. Best, did you cause him to not be here? I said, Judge, I suppose you could say I caused it, but I didn't do anything wrong. I just told him he didn't have to be here if he didn't want to, if he wasn't under subpoena. I think that's the situation here. I hope we're not going to adopt the standard that someone can say, I hope you're not a snitch. I hope you don't turn on me. No other possibility of threatening or intimidation or anything else. I hope you don't testify against me. I hope that's not standard for wrongdoing. The law is saying that this has to be a threat. I'm not saying it could be a threat. Or a call on friendship. I don't think a call on friendship is a wrongdoing as anticipated by the rule. A call on friendship is, don't testify against me, your friend. And frankly, I don't think that's the wrongdoing that the statute or... That's what I just said to you. It has to be a threat. Well, it could be other things. Promises. It could be murder. I mean, I listed all kinds of other things. The position says to the minor, I'll love you forever and your wife will be that of a princess if you just don't testify. That's not sufficient. I don't think that's a wrongdoing. It may be unpleasant. It may be something you shouldn't do. But I don't think it's a wrongdoing as anticipated by the common law exception and by Rule 84. That's all I'm saying. It's wrong. It's wrong to do that. But I think just expressing a hope that you will not cooperate should not be enough to waive our 60-month right to consultation. I've far exceeded my time. We'll give you a little time in your bucket. Thank you. Mr. May? How are you all doing? My name is Jim May. I represent the United States through the United States Attorney's Office in South Carolina. This case is about a man who prostituted women and children. He sold these women and children at 15-minute increments. He sold them so he didn't have to work. He made them, coerced them, and manipulated them to do terrible and inhumane things. I think we can accept all that. Let's talk about the search warrant. All right. Starting with the search warrant. Was it your burden to show reasonableness? Well, I think we need to look at the context of how this issue came up. The reason why you brief issues is so that way both sides can be apprised of the issue that's being brought up. And that way when the government puts up evidence, we can put up evidence that explains exactly how we got to this situation. I think what you pointed to in the record as far as Joint Appendix 468 is that we have an investigation being handled by the field district or the field office of the FBI in Charlotte. Are we entitled to look at that? Yes, Your Honor. You can affirm any reason in the record. Well, what we're doing is looking at whether you made your berth at the suppression hearing. You didn't offer that explanation at the suppression hearing. Because this issue wasn't raised when the record was opened to put up testimony. It was later put up, it was later fleshed out because you have, in this case, you have five different agencies that were somewhat working together in an attempt to find out what's the best place to bring cases. Where's that in the record, five different agencies? Well, when you look, you have the U.S. Attorney's Office in both Western District and District of South Carolina. You have the FBI field office in Charlotte. You have the FBI field office in Columbia. But then you also, as you note, that he was arrested by Richland County Sheriff's Department. He was arrested on a gun charge on December 31st. He was convicted of that charge in the trial. He was convicted of 922G. So you did have a coordination of multiple jurisdictions. And I understand why counsel doesn't want the court to look at Valmont from the 11th Circuit. Valmont says a 45-day delay is not unreasonable when the investigative agencies are looking at where to continue the investigations moving forward toward warrants. All right, let me, I want to make sure I understand the factual setting. Yes, sir. For the rationale for the delay. So this, the motel incident where the phone was seized was in South Carolina? Yes, sir. Okay, so they got the phone there. What's, explain the impediment to this going, was that seized by the federal agents or state agents? It was seized, you understand, by the FBI, I believe on February 3rd. So it was by the FBI. So what's the impediment with, they've got the phone, but simply going to the U.S. Magistrate and whatever the division of the District of South Carolina is and getting the warrant for the phone? They could have done that. We did not, but it was not unreasonable to try to coordinate as there was a pending investigation. Well, no, that's not correct because if you could have done that, there's a privacy interest here involving the seizure of a cell phone. So the government has to act with some dispatch here. And, in fact, as Judge Agee, I think, suggests, it would not have mattered where you got the warrant because presumably you could have used that evidence in any jurisdiction based on a valid warrant. Then why not move immediately in South Carolina to get the warrant? And it could have happened. But I push back on the one thing is that the possessory interest was not going to be given back to the defendant. He didn't have the phone. This is not like the case, the 11th Circuit case, where at least some extracts or excerpts from the hard drive were retained by the defendant. We're talking about a cell phone. The Supreme Court has made it very clear it has a significant Fourth Amendment interest in the privacy that attaches to it. So that's what we're trying to balance, that against what the agent said here. And all I see in this record is, well, we weren't sure whether or not this case was going to move forward in North Carolina or South Carolina, but why does that matter in the context of getting a search warrant? Well, I think there are two different issues here. One is why does it matter because this is the reason why there was a delay. But it has to be a good reason. It has to be a sufficient reason. It has to be that it is not unreasonable. But the other issue in this case, though, I think that I push back a little bit, is that just as the case that the defense relies everything on, which is Mitchell, is that there is the possessory interest unless there is some other evidentiary value of that item. So in this item, there's other evidentiary evidence. The cell phone is a tool of the trade of the human trafficker. We can see through the text messages entered through the child's phone that she is communicating with the pimp while she is performing sex acts. That may go to the duration of the seizure, but I'm not sure that really addresses the timing of the search. So help me understand. This is seven times. I think I'm repeating what I asked him to do. He is asking. You seize the phone. You go to the magistrate in South Carolina. You get a search warrant. You search the phone. What impediment is that to a prosecution either in federal court or state court in either North or South Carolina? There is no impediment. However, when you have agents who are attempting to try to find, the agents are trying to do their best. They are contacting their cohort in North Carolina who has an active human trafficking case against this defendant. But if you've gotten a search warrant and searched the phone in South Carolina, that evidence is portable to North Carolina if that's where you decide to bring the other charges. You are correct. It is portable. There is not a, but there is also no rule that says that Special Agent Gregory, who is the case agent in Western District, North Carolina, he has information that needs to go into a search warrant. Special Agent Luke Davis has information that needs to go into a search warrant. They need to synthesize. They need to figure out what's the best place. And that's what they did. There's no testimony. I'm sorry, sir. No, no. Go ahead. There's no testimony. There's no evidence that this was, it didn't matter. There's no testimony of bad faith. There's testimony that they were attempting to try to. Is that a requirement? Does the defendant need to show bad faith? He doesn't. However, that would show unreasonableness. Well, that's one way to show it. Correct. Another way is the agents are sitting around drinking cokes and smoking cigarettes and not moving as expeditiously as they could. That doesn't appear in this record. I know that. But, you know, having conceded that this warrant would have satisfied the requirements of any jurisdiction, it just strikes me as unreasonable for the agents then to decide that they could afford to wait. And, Your Honor, when we – So you've seen sort of how this argument's going. I do. What's your harmless error argument? Well, the harmless error argument is that everything that was – the harmless error argument is that the child's phone was introduced into evidence, information from the child's phone was introduced into evidence, which include text messages, which includes the child pornography. Additionally, you have telephone calls. You have eyewitnesses to the abuse. Everything that came in – let me walk that back – that there's a tremendous amount of evidence that came in absent that defendant's phone. Did the defendant admit that there were calls, that there were pictures of nude young women on his phone?  And at that point – That comes in. To return this telephone, right, at that point the phone is presumed contraband, right, because – Was there anything on the phone that independently, all on its own, supported a count in which he was convicted? Yes, sir. Yes, ma'am. The – number one is that we had to show that the cell phone traveled in interstate commerce. The phone itself was introduced into evidence to show that it was – No, no. The contents of the phone. In other words, is there anything that you needed a search warrant for, that you ultimately got the search warrant for perhaps too late, that would make this not harmless error because it was the only evidence that supported a count of conviction? No, Your Honor. I'd be happy to talk about the torture by wrongdoing unless you all have additional questions regarding the search warrant. Your Honor, I believe that the court – You know, whatever happens in this case, I hope that the word goes out to your office and to any other offices that were involved in this case that you don't hold cell phones for 30 days. Yes, Your Honor. Even 20 days. Pretend that you go get the warrant. Yes, Your Honor. Well, in looking at the torture by wrongdoing, I believe that the court through – on supplemental Joint Appendix 452 – I guess Joint Appendix 452 through 460 goes through and applies the prongs of Gray and Dinkins to the evidence of this case to the clips. And I think Judge Diaz is correct that you have to look at this through the context of the entire case. Looking just at the excerpts without having been in the court, without looking at the entire record, without looking at the manipulation, the abuse of this child, it looks very different than as the court stated on the supplemental Joint Appendix 460 that he had control over this particular person. But the context matters.  The court is in the position to see the totality of the circumstances, to see and hear the other witnesses, to hear the abuse that Kristen Baker talked about, which is in the Joint Appendix, to hear the abuse that Azori Mills talks about in the Joint Appendix. So the court is in a unique position to weigh these three factors as laid out by Dinkins and Gray regarding did the defendant engage or act as a wrongdoing. And the court makes a finding in this effort to keep her from testifying, is in fact wrongdoing, which is Joint Appendix 456. Was this intended to render the declarant unavailable? The court finds there was specific effort by the defendant to keep the child from being a witness, Joint Appendix 456. And did the wrongdoing, in fact, render the declarant unavailable? Joint Appendix 453 through 455, he finds that he did. Your Honor, I think that the court is in the correct position, the court did not use his discretion in admitting this limited statement against the defendant. And if you all don't have any questions. I don't think we do. Thank you very much. Thank you. Mr. Betz, can I ask you the question that I asked your colleague on the other side? Is there any count in which your client was convicted in which the evidence rests solely on the information found in his cell phone? Right off the top. Honestly, I can't give you an honest, full answer of that. As I would look at it, though, as a cumulative basis, if you take the information that was on the cell phone out of this trial, I think the outcome quite likely could have been substantially different. I don't believe there's enough. Well, there's his admission that there are the pictures of the new young women on the cell phone, and there's the testimony of one of these victims, and there's her cell phone, her records. There's his mother's testimony. There's a lot of other evidence that's floating around here. I don't dispute that, Your Honor. As I said at the very beginning, the facts here are not pretty at all. Right, I understand. Not pretty at all. And, yeah, the only response I would have there, too, as far as the harmless error, think of one thing, what this Court said in gray. The purpose, the goal of the forfeiture by wrongdoing and, by contrast, Rule 804, is to prevent abhorrent behavior that is high and it strikes at the heart of the system of justice. No, it's the wrongdoing that is just intolerable. It's not the, I hope you don't come testify against me case. That's all I would suggest to you. This just isn't that case. This isn't murder. This isn't intimidation. The Court relied on, I believe it's the Second, Seventh Circuit case of Johanson. In that case, the misplaced, the district court misplaced the reliance on that, because in that case there were 75 phone calls threatening this daughter, 20 letters. There was testimony certifying why the father was a threat to her, on and on and on. There was a lengthy paragraph in that case. And that was the one relied on by the district court to say this is an example of why I'm adopting wrongdoing. I think it's extremely important to realize that looking at, what did the Court tell us I'm looking at? I'm looking at these three exhibits. I'm not looking at this other speculation, all these other things for wrongdoers. I'm looking at three phone calls that covered two pages apiece. And in those, all that was said was, I hope you're not cooperating, and I hope the other minor isn't either. I hope you can find out. That's the extent of the wrongdoing in this case that allowed a substantial amount, all of the testimony, the things that the minor said about being prostituted, et cetera, et cetera. All of that evidence came in because of the wrongdoing exception. So you've got to look at both, not just this 31 day and, you know, would it have not if it wasn't on the cell phone. It was also this minor's testimony or information she gave to the police at the time. All of that came in just because this man said, I hope you don't testify against me. And, you know, baby, I hope you don't testify against me. And he went so far as to say, my goose is cooked if you do. There's two parts to the puzzle. He realized how important her testimony was. She did too and told him she was not cooperating. Thank you. Thank you very much. And thank you for your representation as lawyer. We understand you're court appointed. And we couldn't do it without lawyers like you. I enjoy being able to do it. Thank you. We will come down and greet the lawyers and then go directly to the next case.
judges: Diana Gribbon Motz, G. Steven Agee, Albert Diaz